# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**AKEEM MUHAMMAD,**

    **Plaintiff,**

vs.                                                   Case No. 4:05cv193-WS/WCS

**JAMES V. CROSBY, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Recently, Plaintiff's *pro se* motion for reconsideration of the previously issued report and recommendation, doc. 5, was granted. Doc. 15. Thus, the report and recommendation was vacated and the issues surrounding the subject of that recommendation, Defendants' motion to transfer venue, doc. 3, has been considered anew along with Plaintiff's objections to the transfer, doc. 12, the arguments presented in Plaintiff's motion for reconsideration, doc. 11, and Plaintiff's response to the motion to transfer venue, doc. 8.

**Procedural Status**

This case was initiated in this Court on a timely notice of removal filed by Defendants James V. Crosby, Jr., George Sapp, and Franchetta Barber. Doc. 1. Plaintiff, a *pro se* inmate, initially filed his civil rights complaint in the Circuit Court of the

Second Judicial Circuit, Leon County, Florida, in late April or early May, 2005.  Doc. 1.  Plaintiff is incarcerated at Union Correctional Institution which is in the jurisdiction of the Middle District of Florida.  *Id.*  The complaint contains numerous allegations about a multitude of separate issues:  burdens on Plaintiff's religious expression, subjection to forced shaves, denial of Plaintiff's request to have his gold crowns removed, examination by a female nurse, lighting in Plaintiff's cell, return of publications without allowing Plaintiff appeal time, and other claims.  No grievances were attached to the complaint.

The case was timely removed to this Court on June 8, 2005.  Doc. 1.  Defendants havey requested that Plaintiff's complaint be transferred to the Middle District of Florida.  Doc. 3.

**Basis for Transfer of Venue**

Defendants assert in the motion to transfer venue, doc. 3, that the complaint concerns conditions of confinement at Plaintiff's place of incarceration, Union C.I., which is in Raiford, Florida, and that transfer should be directed pursuant to 28 U.S.C. § 1404(a).  Defendants state that "[e]fficiency and resource allocation weigh in favor of a venue transfer" as the "actions about which [Plaintiff] complains occurred at Union Correctional Institution."  *Id.*  Further, Defendants submit that the parties' witnesses will be at the Correctional Institution, and that the "relevant documentation is likely to be maintained at Union Correctional Institution."  *Id.*

**Plaintiff's Argument in Opposition to Transfer**

In response, Plaintiff has argued that all the actions in this case "did not occur at Union Correctional Institution" because the actions "originated from the Defendants in

their Tallahassee office."  Doc. 8, p. 2.  Plaintiff indicates that Defendants at the institution were simply following orders and policies from the Department's Central Office in Tallahassee.  *Id.*  Plaintiff also suggests that the witnesses in this case are in Tallahassee.

**Analysis**

Venue for a civil action alleging a federal claim is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant may be found . . . ."  28 U.S.C. § 1391(b).  Here, all three named Defendants are officials with the Department of Corrections and are employed at the Department's Central Office in Tallahassee, which is within the jurisdiction of this Court.  Venue is, accordingly, proper here under § 1391(b)(1) because Defendants reside in this district.

Nevertheless, § 1404(a) permits a court to transfer a civil action to another district or division where the case could have been brought "[f]or the convenience of parties and witnesses" or "in the interest of justice . . . ."  28 U.S.C. § 1404(a).  The statute was "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' "  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988)(holding that federal law, specifically § 1404(a), controls a request to transfer venue in a diversity action), *quoting* Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964).  Weighing in the balance of transfer are such issues as the convenience of the "forum given the parties' expressed

preference for that venue, and the fairness of transfer."  <u>Stewart Organization, Inc.</u>, 487 U.S. at 29, 108 S.Ct. at 2244.  The statute itself reveals "three primary factors for a district court to consider when making a decision under this provision: convenience of the parties, convenience of the witnesses, and the interest of justice."  <u>TV-3, Inc. v. Royal Ins. Co. of America</u>, 28 F.Supp.2d 407, 411 (E.D. Tex. 1998), *citing* <u>Jarvis Christian College v. Exxon Corp.</u>, 845 F.2d 523, 528 (5th Cir.1988).

At the outset, it must be noted that venue could be proper in the Middle District under § 1391(b)(2),  which allows jurisdiction in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(b)(2).  Plaintiff has argued that the claims did not occur in Raiford, Florida, but "originated" in Tallahassee.  Doc. 8, p. 2.  To make this determination, the complaint has been reviewed to determine whether Plaintiff is complaining about events which took place at Union Correctional Institution, or whether Plaintiff is truly complaining about the carrying out of prison rules or policies issued by Central Office.

Plaintiff's complaint is brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act.  Doc. 1.  Plaintiff challenges "rules and policies of the Florida Dept. of Corrections" which Plaintiff contends substantially burdens his religious practices and the free exercise of religion.  Doc. 1.  Plaintiff specifically cites Rule 33-602.101, an administrative regulation which requires inmates to be clean shaven and permits prison officials to use force to shave an inmate who refuses to shave, in this challenge.  Nevertheless, Plaintiff primarily complains about the manner in which the "forced shave" is carried out.  Plaintiff suggests there is "an unwritten policy which condones the placing of inmates in showers with only very hot water for use to

rinse off skin exposed to chemical agents."[1]  Plaintiff also specifically identifies Rule 33-501.401 which he contends "requires FDOC officials to return to the publisher any incoming book or publication addressed to an inmate and found objectionable . . . ." Doc. 1.  Plaintiff also challenges a policy, identified as Rule 33-501.401(17) which does not permit inmates to receive books with hard covers.  Plaintiff claims that he is not given an opportunity to appeal the decision prior to the return and alleges the return of several books by Union C.I. mail room staff.  These claims do concern rules and policies which appear to be traceable to Central Office in Tallahassee.

However, Plaintiff also challenges many other situations in this case without citing any specific rule, regulation, or policy.  For example, Plaintiff complains that the religious diet he is offered violates his First Amendment rights, and contends he was denied the opportunity to fast during Ramadan in 2003.  It is unclear from these broad allegations whether those denials or violations were a matter of policy or simply took place at his institution.  Further, Plaintiff alleges that "FDOC officials denied Plaintiff's requests that he be shown the direction of Qibla."  This claim fails to identify a policy, or even show how any named Defendant is involved in this claim.[2]  Without citing to a particular policy or rule, Plaintiff also contends he is not allowed to wear a Qamees, and must "keep his prison issued shirt tucked inside his pants."  Plaintiff challenges his inability to "pray in congregation" and the denial of several other items which Plaintiff

---

[1] Plaintiff alleges chemical agents are part of the force used to shave inmates.

[2] Plaintiff also complains that he is confined and disciplined for refusing "to obey any FDOC order or rule that substantially burdens the free exercise of his religion." Doc. 1, complaint, ¶ 9.  That statement fails to provide the specificity needed to consider this a valid challenge to a rule.

Case No. 4:05cv193-WS/WCS

broadly contends violates his ability to practice his religious faith. Plaintiff also complains that his religious beliefs require that he be touched only by male medical staff and asserts that he is required to allow a female nurse to touch him. For the vast majority of those claims, Plaintiff does not identify a policy or rule, or a specific Defendant who created the policy (if such a policy exists) or enforced it. Without any identifiable policy, the actions complained of should be considered challenges to conditions of confinement in Raiford, Florida, because there is no showing of any Tallahassee involvement or claims concerning the enforcement of a Tallahassee policy, regulation, or rule.

Additionally, Plaintiff specifically complains about the lack of lighting in his cell and contends that "Defendants leave to the discretion of individual security staff when to turn on or off Plaintiff's cell lights daily." Doc. 1. Even the most liberal reading of the complaint cannot transform this claim into one against the Defendants in Tallahassee, but must be viewed solely as a claim against unnamed prison officials at Union Correctional Institution who regulated the lighting in Plaintiff's cell.

Thus, Plaintiff's claims in this case present both types of claims - claims against Defendants residing in this judicial District for rules created in this district, as well as claims and events occurring in the Middle District. Furthermore, consideration of a rule, policy, or regulation created in Tallahassee must, nevertheless, consider the impact of that rule on Plaintiff and the manner in which the rule is carried out. Indeed, part of Plaintiff's claims directly challenge the method by which prison officials at Plaintiff's institution conduct the forced shave. Thus, despite the fact that Plaintiff may be challenging the validity of some rules, Plaintiff is generally challenging the enforcement

or operation of rules at Union Correctional Institution, which is in the Middle District. These considerations support a decision to transfer this case.

At this juncture it is also impossible to determine whether any of these claims could even be litigated because Plaintiff has not presented any grievances with his complaint.  Plaintiff asserts that he exhausted all available administrative remedies, but that assertion is insufficient by itself.  Plaintiff must demonstrate that he properly exhausted administrative remedies by submitting the grievances to proceed in this litigation.  This point is noted because it precludes an accurate determination of the claims which may actually be litigated in this case.[3]  For example, if it could be determined that only a claim challenging the validity of a rule was being made, regardless of where the rule was enforced or the manner in which it was enforced, then it might be appropriate to keep this case in this District.  However, as the complaint presently stands, that determination cannot be made.

In considering the convenience of the parties, the Court is hard-pressed to determine how Plaintiff would be subjected to a greater hardship whether this case is litigated in the Northern District or the Middle District.  Plaintiff himself suggests that any hearings which take place throughout this litigation would be done telephonically where his location would be irrelevant.  Plaintiff claims it would be easier and more convenient for Defendants' counsel if this case remained in this District where, at this time, counsel is also. But Plaintiff is not in the position of being able to argue the convenience for

---

[3] Because 42 U.S.C. § 1997e requires exhaustion of administrative remedies, it is possible that only the claims concerning Department rules could be litigated if those were the only claims exhausted.  Such a finding would provide greater support for the decision either granting or denying the motion to transfer venue.

Case No. 4:05cv193-WS/WCS

Defendants' counsel, and Plaintiff has not shown how or why this District is more convenient for him. Defendants have stated in the motion to transfer, doc. 3, that "efficiency and resource allocation weigh in favor of" transferring venue, and that argument is supported by noting that the parties' witnesses would be located at Union Correctional Institution, as well as "any relevant documentation." Accordingly, this provides another basis for granting Defendants' motion.

While a plaintiff's choice of forum is generally given preference, it is also true that "where none or few of the operative facts underlying the cause of action occur within the forum chosen by the plaintiff, the chosen forum is entitled to less consideration." Fletcher v. Exxon Shipping Company, 727 F.Supp. 1086, 1087 (E.D. Tex. 1989). Regardless of Plaintiff's characterization of his claims as being against policies made by prison officials at the Department's Central Office, the enforcement of those policies took place at a particular Correctional Institution. The rules will not be considered in a vacuum, but will be reviewed in light of the enforcement and operation of the rules and the manner in which they impacted Plaintiff. Witnesses to the events challenged and the carrying out of rules will be at the Institution. The operative facts underlying Plaintiff's claims took place in Raiford, Florida; thus, Plaintiff's choice of forum in this case carries minimal weight.

Finally, Plaintiff's claims in this case span a number of years, and Plaintiff indicates he has filed other actions. Plaintiff appears to have been housed at Union Correctional Institution for at least the past three years. Supporting the decision to grant the transfer motion is the common sense notion that the Middle District will be more familiar with Plaintiff's litigation history and with the possibility that some of the many

claims presented in this complaint have already been litigated.  The Middle District is more familiar with prison claims challenging prison conditions at Union Correctional Institution than this Court would be.  Those factors weigh in favor of transfer to the Middle District of Florida, an appropriate forum for this action pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 89(b).

It is plain that the Tallahassee Defendants now named had no personal involvement in the most of the events alleged to have occurred at Union Correctional Institution.  Consequently, those claims against these Defendants will probably be dismissed.  However, Plaintiff has the opportunity to amend to name the persons at Union Correctional Institution who he asserts caused his injuries or harms.  If there is any merit to Plaintiff's claims, it would be best that the claims be heard where they occurred with proper Defendants.

In light of the foregoing, and pursuant to 28 U.S.C. §§ 1404(a) and (b), the undersigned respectfully **RECOMMENDS** transfer of this action to the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to the Court's discretion as provided for in 28 U.S.C. § 1404, for all further proceedings.[4]

**IN CHAMBERS** at Tallahassee, Florida, on July 26, 2005.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Several of Plaintiff's motions remain pending and should be addressed in the first instance by the receiving court.

Case No. 4:05cv193-WS/WCS

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.