**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**AKEEM MUHAMMAD,**

      **Plaintiff,**

**vs.**                                 **Case No. 4:05cv193-WS/WCS**

**JAMES V. CROSBY, et al.,**

      **Defendants.**

_____/


**SIXTH REPORT AND RECOMMENDATION**

      Plaintiff filed a fourth motion for a preliminary injunction.  Doc. 142.  Plaintiff is requesting that Defendants be ordered to provide him "with Islamic Dietary accomodations [sic] in the form of the prison's existing alternate entree 'bag lunch' meal pending final disposition" of this case.  *Id.*  Plaintiff's third amended complaint alleged that Defendants' policy of denying him a Halal diet or Islamic dietary accommodations substantially burdens his First Amendment right to the free exercise of his religion.  *Id.*  Plaintiff states that the Department of Corrections will allow inmates to have "bag lunches" which are issued at staff's discretion.  *Id.*, at 6.  These are uncooked meals generally given "to inmates who will be away from the kitchen or confinement housing unit when cooked meals are served."  *Id.*, at 7.  Plaintiff contends that this type of meal is much less objectionable than the cooked alternate meal plan.  *Id.*

Plaintiff states in his motion that he attempted to resolve this issue with Defendants and sent a request on February 16, 2007.  Doc. 142, p. 11.  Plaintiff advises that he did not receive a response.  *Id.*; *see also* ex. K, doc. 142.  The request Plaintiff sent was in the nature of a letter to opposing counsel, advising that if Defendants deny his request, he would move for a preliminary injunction.  Ex. K, doc. 142.

Defendants have responded, doc. 152, and urge denial of the motion for a preliminary injunction on the basis that Plaintiff never exhausted administrative remedies as to this request.  Furthermore, Defendants assert that Plaintiff is attempting to "cast his claim as one for preliminary injunctive relief in what appears to be an effort to circumvent this court's refusal to allow him to amend his complaint at this late date."  *Id.*, at 4.

Plaintiff has been given leave to file a reply to Defendants' response, *see* doc. 155, and his reply, doc. 156, has been considered.  Plaintiff argues that he is not attempting to present a new claim, but states this is part of his original claim.  Doc. 156, p. 3.  Plaintiff also notes that, to the degree Defendants have argued that Plaintiff has not demonstrated he exhausted administrative remedies, he submitted a request for an "all cold diet" from prison officials in 2003.  *Id.*  His request was denied and Plaintiff contends he exhausted administrative remedies as to the request.  Plaintiff explains that at the time, he referred to this as a "all-cold diet" but that this is the same an alternate bag lunch.  *Id.*, at 4.

When Plaintiff sought leave to file a fourth amended complaint, doc. 107, Plaintiff wanted to add claims concerning being forced to shave and seeking accommodation for his desire to have a Ramadan fast.  Doc. 107.  The request for an injunction does not

concern those claims and Defendants' suggestion that Plaintiff is attempting to bypass the denial of leave to amend is rejected.

As for the argument that Plaintiff is seeking a court order directing the Defendants to undertake action which Plaintiff never requested of the Defendants, it is acknowledged that submitting a request to opposing counsel is not the same is submitting a grievance to prison officials who are in a position to address Plaintiff's request.  Yet, it is not clear that Plaintiff had to exhaust this request for relief.

Underlying the exhaustion requirement of 42 U.S.C. § 1997e(a) is the concept that administrative exhaustion gives state prison officials an opportunity to take corrective action in response to a prisoner's grievance and, thereby, eliminates the need for some claims to be litigated.  Porter v. Nussle, 534 U.S. 516, 525, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002).  Because Plaintiff never submitted this request to prison officials, he did not give the Department of Corrections an opportunity to either grant or deny his request.  However, Plaintiff did submit sufficient grievances to exhaust his *claim* that the food he is served violates his rights under the First Amendment and the RLUIPA.

It is noted that, in general, the exhaustion requirement does not require an inmate to exhaust remedies, but claims.  Indeed, in Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002), the court concluded that a prison grievance process could not "demand that the prisoner specify each remedy later sought in litigation . . . ."  The question raised in Strong was what must an inmate present in his or her grievance when the state prison's rules and regulations do not prescribe "the contents of a grievance or the necessary degree of factual particularity."  Strong, 297 F.3d at 650.  The Seventh Circuit

held that "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  *Id.*

> As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming.  Strong's two grievances were comprehensible and contained everything that Illinois instructed him to include.

Strong, 297 F.3d at 650.  The court based this holding on the Supreme Court's conclusion in Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), that § 1997e(a) requires prisoners "to exhaust a process and not a remedy."  Strong, 297 F.3d at 649-50.  The issue considered in Booth v. Churner was whether an inmate had to exhaust administrative remedies for a claim of physical abuse and excessive force when the prison grievance system had no provisions for recovery of money damages, and that was the sole remedy sought by the plaintiff.  In particular, the Court was called upon to clarify the statutory meaning of the words, "until such administrative remedies as are available are exhausted."  *Id.*, at 736, 121 S.Ct. at 1823.[1]  The Court phrased the dispute this way: "whether or not a remedial scheme is 'available' where, as in Pennsylvania, the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress."  *Id.*, at 736, 121 S.Ct. at 1822-1823.

The inmate-plaintiff, Booth, had "filed an administrative grievance charging at least some of the acts of abuse he later alleged in his action."  Booth, 532 U.S. at

---

[1] The full text of this provision states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

734-735, 121 S.Ct. 1819, 1822.  Booth did not proceed beyond the first step in the grievance process, and never sought review of the denial of his initial grievance.  *Id.*, at 735, 121 S.Ct. at 1822.  The argument from Plaintiff was that "when a prisoner demands money damages as the sole means to compensate his injuries, a grievance system without that relief offers no 'available' 'remed[y].'  532 U.S. at 738, 121 S.Ct. at 1823.  The Supreme Court concluded, however, that when Congress amended this statute as part of the Prison Litigation Reform Act, it mandated exhaustion, " regardless of the relief offered through administrative procedures."  Booth, 532 U.S. at 741, 121 S.Ct. at 1825.  Thus, it must be in that context that Booth is read and applied.

In this case, Plaintiff has raised a claim concerning his diet for which he admittedly exhausted administrative remedies.  Plaintiff's third amended complaint, doc. 63, sought injunctive relief in the form of requiring Defendants to "provide Plaintiff a Halal diet" and monetary damages.  Plaintiff did not request injunctive relief in the form of the very specific meal he now seeks, a bag lunch for every meal.  However, this is not a separate and distinct *claim*.  Plaintiff is not claiming that by denying him a bag lunch, Defendants are violating his rights.  Plaintiff is simply requesting that preliminary relief be provided to him before this case is resolved, and he has suggested a manner of doing so that he believes would be convenient for Defendants and the lesser of two evils for him.  This request for preliminary injunctive relief should not be denied on the basis of § 1997e(a).[2]

---

[2] In light of this conclusion, there is no need to undertake an examination of whether or not Plaintiff properly exhausted administrative remedies on his request for an "all-cold diet" or whether that request was for the identical bag lunch diet he now seeks.

Defendants fail to present argument on the merits.  Nonetheless, Plaintiff's request for preliminary injunctive relief will be considered on the merits.  The standard for reviewing a motion for a preliminary injunction requires that a plaintiff establish:  (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest.  Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997), Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994); United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983).  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" of all four prerequisites, which is always upon the plaintiff.  Jefferson County, 720 F.2d at 1519, *citing* Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974).

In considering the first factor, it does not appear that Plaintiff faces a "substantial likelihood of success on the merits."  This is not to say Plaintiff cannot prevail on his diet claim, but it must be recognized that this will be a difficult undertaking.  There is considerable precedent pointing that "providing Muslim inmates with a pork-free diet satisfies the First Amendment."  O'Lone v. Shabazz, 482 U.S. 342, 352, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), *relied upon in* Hudson v. Maloney, 2004 WL 626814, at *1 (D. Mass., March 30, 2004) (denying motion for preliminary injunction to require prison to provide Halal meals).  Other cases have concluded that failing to provide a Halal diet to Muslim inmates does not violate the First Amendment given the availability of alternative diets.  *See*, e.g., Abdul-Malik v. Goord, 1997 WL 83402 (S.D.  N.Y. Feb. 27,

1997), *quoting* Kahane v. Carlson, 527 F.2d 492, 496 (2d Cir. 1975); Cox v. Kralik, 2006 WL 42122, *1 (S.D. N.Y., Jan. 6, 2006) (granting summary judgment in favor of prison officials in holding that providing Kosher and vegetarian meals fulfills the dietary requirements of the Muslim faith); Hudson v. Maloney, *supra*; Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003) (ruling that a vegetarian diet is an acceptable substitute for a Halal diet); Abdullah v. Fard, No. 97-3935, 1999 WL 98529, at *1 (6th Cir. Jan. 28, 1999) (unpublished opinion) (same); Boyd v. Lehman, 2006 WL 1442201, *8 (W.D. Wash., 2006) (concluding that "defendants' decision to deny plaintiff meals containing halal meat as a part of his religious diet or, in the alternative, kosher meals, is rationally related to a legitimate penological purpose" and entering summary judgment in defendants; favor on plaintiff's First Amendment claim.); Spruel v. Clarke, 2007 WL 1577729, *3 (W.D. Wash., May 31, 2007) (granting defendants' motion for summary judgment on plaintiff's claim that defendants violated his rights under RLUIPA by refusing to provide him halal meat and noting that plaintiff is offered an "ovo-lacto vegetarian diet").  In light of the weight of authority against Plaintiff on this dietary claim, Plaintiff has not demonstrated a substantial likelihood of success.

Moreover, it is noted that Plaintiff seeks to recover damages under 42 U.S.C. § 1983.  Because Plaintiff has an adequate remedy at law, there can be no finding of "irreparable" injury.  The unavailability of an adequate remedy at law is essentially a prerequisite to a finding of irreparable injury.  Jefferson County, 720 F.2d at 1520 (finding "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *see also* Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000)

(holding that where "there is an adequate remedy at law, [ ] plaintiffs are not entitled to declaratory or injunctive relief").  Failing to issue an injunction in this case would not constitute a "substantial threat of irreparable injury" as Plaintiff may recover monetary damages should he be successful on this claim.  The "absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).

Finally, this is the fourth motion for a preliminary injunction filed by Plaintiff. Plaintiff has attempted to try this case piece-meal, with a succession of such motions. In the interests of judicial efficiency and reduction of the costs of litigation, Plaintiff should not be permitted to file another such motion.

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.  Plaintiff's fourth motion for a preliminary injunction, doc. 142, be **DENIED** and this case be **REMANDED** for further proceedings.

2.  The court **ORDER** that it will not consider another motion for preliminary injunction or emergency relief by Plaintiff.

**IN CHAMBERS** at Tallahassee, Florida, on June 26, 2007.

**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**